O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA LABROWN,<br><br>              Plaintiff,<br><br>     vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>              Defendant. | Case No. CV 12-0281-JPR<br><br>MEMORANDUM OPINION AND ORDER<br>REVERSING COMMISSIONER AND<br>REMANDING FOR FURTHER<br>PROCEEDINGS |

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB") and Supplemental Security Income benefits ("SSI").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).  This matter is before the Court on the parties' Joint Stipulation, filed September 17, 2012, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

## II.   BACKGROUND

Plaintiff was born on August 16, 1951. (Administrative Record ("AR") 219, 222.)  She has an 11th-grade education.  (AR 255.)  Plaintiff worked for approximately 15 years as a microfilm technician.  (AR 219, 251, 266.)  She stopped working on August 30, 2003, because she was laid off.  (AR 250.)  Plaintiff filed applications for DIB and SSI on April 9, 2004; they were denied on July 28, 2006, and the Appeals Council affirmed the denials on December 18, 2006.[1]  (AR 27.)

On January 24, 2007, Plaintiff again filed SSI and DIB applications, alleging that her circumstances had changed and she had acquired a new severe impairment since the July 2006 denial of benefits; she alleged she had been unable to work since August 1, 2006, because of lower back pain; pain in both arms, her right elbow, and her left shoulder; anxiety attacks; and depression. (AR 31, 219, 222, 250.)  After Plaintiff's applications were denied, she requested a hearing before an Administrative Law Judge ("ALJ").  (AR 160.)  A hearing was held on February 20, 2008, at which Plaintiff, who was represented by counsel, appeared and testified on her own behalf.  (AR 65-89.)  In a written decision issued on June 9, 2008, the ALJ determined that Plaintiff was not disabled.  (AR 51-61.)  Plaintiff then requested review of the ALJ's decision, and on October 8, 2008, the Appeals Council vacated the hearing decision and remanded the case for further proceedings.  (AR 149-52.)  On November 12, 2009, a hearing was held before the same ALJ, at which Plaintiff,

---

[1] Plaintiff apparently did not appeal those denials to the district court.  (See AR 27.)

who was represented by counsel, appeared and testified again on her own behalf. (AR 90-133.) Medical Expert Dr. David Peterson also testified. (AR 95-119.) On December 1, 2009, the ALJ issued a written decision again finding that Plaintiff was not disabled. (AR 23-45.) Plaintiff requested review of the ALJ's decision and submitted additional evidence to the Appeals Council; on June 8, 2011, the Appeals Council denied review. (AR 9-12.) On June 22, 2011, Plaintiff's counsel requested that her case be reopened because the Appeals Council had not referenced an additional legal brief he had submitted. (AR 8.) On November 17, 2011, the Appeals Council incorporated the additional evidence into the record but denied Plaintiff's request for review. (AR 1-7.) This action followed.

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); <u>Parra v. Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. <u>Richardson</u>, 402 U.S. at 401; <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. <u>Lingenfelter</u>, 504 F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the

administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

    A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform her past work; if so, the claimant is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.  If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  That determination comprises the fifth and final step in the sequential analysis.  §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  20 C.F.R. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

B.  <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since August 1, 2006.  (AR 31.) At step two, the ALJ concluded that Plaintiff had the "medically determinable" impairments of "right shoulder injury, osteoarthritis, history of hernia, history of hysterectomy, gastrointestinal reflux disease (GERD), hypertension, hepatitis C infection, diabetes mellitus, obesity, and mental depression." (<u>Id.</u>)  He found that Plaintiff's physical impairments in combination were severe.  (<u>Id.</u>)  As to her depression, however, he found that it "provides only mild limitations in her activities of daily living, social functioning and ability to maintain concentration, persistence and pace" and "has not caused any episodes of decompensation of extended duration"; thus, it was "not a severe impairment."  (<u>Id.</u>)  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing.  (AR 36.)  At step four, the ALJ found that Plaintiff retained the RFC to perform "a reduced range of medium work,"[3] with the limitations that Plaintiff

> can lift and carry up to 50 pounds occasionally and 25 pounds frequently.  She can stand and walk up to 6 hours in an 8 hour day, and can sit up to 6 hours in an 8 hour day.  She is precluded from overhead reaching with the

---

[3] "Medium work" is defined as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c). The regulations further specify that "[i]f someone can do medium work, we determine that he or she can also do sedentary and light work," as defined in §§ 404.1567(a)-(b) and 416.967(a)-(b).  <u>Id.</u>

right arm. She has no other limitations.
(Id.) Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work as a microfilm camera operator but that she had the RFC to perform the jobs of hand packer, sandwich maker, and laundry worker. (AR 39-41.) The ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform. (AR 40-41.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 41.)

**V.  DISCUSSION**

Plaintiff alleges that the ALJ erred in (1) finding that Plaintiff's mental impairment was not severe; (2) evaluating and weighing the findings and opinions of Plaintiff's treating physicians; (3) determining that Plaintiff's impairments did not meet or equal any impairments in the Listing; and (4) refusing to order additional psychological testing. (J. Stip at 3.) Because the medical expert testified repeatedly that the evidence of Plaintiff's mental impairment was ambiguous and insufficient for him to render a complete diagnosis, the ALJ's decision must be reversed and this matter remanded for further proceedings.

A.  <u>The ALJ Erred in Failing to Further Develop the Record</u>

In her fourth claim, Plaintiff contends that the ALJ erred in not ordering additional psychological testing after Dr. Peterson testified that there was not sufficient evidence in the record to support Plaintiff's claims of a severe mental disability. (J. Stip. at 22-23, 24.) Plaintiff is correct.

An ALJ has an independent duty "to fully and fairly develop the record and to assure that the claimant's interests are

considered." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (internal quotation marks and citation omitted). This is true even if the claimant is represented by counsel. See Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003). The ALJ's duty to develop the record is triggered when there is "ambiguous evidence or when the record is insufficient to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

In Tonapetyan, the Ninth Circuit held that an ALJ's decision should have been reversed because he failed to further develop the record when he heavily relied on the medical examiner's testimony, which was "equivocal" and expressed "concern over the lack of a complete record upon which to assess [plaintiff's] mental impairment." Id. at 1150-51. The medical examiner in Tonapetyan began his testimony by stating that the evidence regarding plaintiff's mental impairments was "confusing" and he felt "a more detailed report [should] be obtained." Id. at 1150. He "found it 'difficult to say' whether the medical record was complete enough to allow the ALJ to reach a conclusion in the case"; he testified that the evidence showed that plaintiff was "somewhat depressed" but "resisted concluding that she did or did not suffer from schizophrenia, however, suggesting that he would 'have to see more evidence of that and a more detailed

1 explanation'" from the plaintiff's treating doctor.  Id.  The
2 medical expert ultimately diagnosed the plaintiff with only mild
3 depression, but "[o]nly when pressed by the ALJ," and still he
4 "remained equivocal throughout his testimony."  Id.  When asked
5 whether a more complete report from the plaintiff's doctor would
6 affect his opinion, the medical expert responded that it would,
7 if it "clarified her symptoms."  Id.  In his written opinion, the
8 ALJ "relied heavily on [the medical expert's] testimony,"
9 adopting his diagnosis of mild depression as well as his
10 "criticisms" of the incompleteness of the plaintiff's treating
11 doctors' opinions.  Id.  The Ninth Circuit reversed, holding that
12 "[g]iven this reliance, the ALJ was not free to ignore [the
13 medical expert's] equivocations and his concern over the lack of
14 a complete record," nor should he have ignored "the [medical
15 expert's specific recommendation that a more detailed report from
16 [the treating doctor] be obtained."  Id. at 1150-51.

17    This case presents a very similar set of facts.  During the
18 hearing, Dr. Peterson began his testimony by noting that there
19 was "a lack of objective medical evidence to support the
20 diagnoses [of severe depression]" and there was "some
21 equivocation within the record."  (AR 96-97.)  He noted that
22 there were "likely mental health issues" but the record "has
23 times where it appears the claimant's just fine, and other times
24 where the claimant can't manage funds on her own behalf, but
25 there isn't adequate medical evidence to support that
26 contention."  (AR 97.)  He then responded to the ALJ's questions
27 as follows:
28    Q.   So, does she have a medically determinable mental

```
 1             impairment or not?
 2        A.   I'd have to say, at this point, there's
 3             insufficient information.
 4        Q.   So, the evidence doesn't show, in your opinion,
 5             that she has a medically determinable mental
 6             impairment?
 7        A.   In moments in time, Your Honor.
```
(AR 97-98.)  Pressed further by the ALJ to render a diagnosis, Dr. Peterson continued to provide equivocal testimony.  The ALJ again asked if, "in your opinion, the claimant is – currently does not have a medically determinable mental impairment?"  (AR 99.)  Dr. Peterson responded: "More appropriately, the record doesn't provide sufficient objective medical evidence to support the existence of . . . a severe impairment."  (Id.)  When the ALJ asked if Plaintiff's treating psychiatrist Dr. Jerome Goldfein's questionnaire diagnosing Plaintiff with "major depression secondary to medical problems, [rule out] dysthymia" (AR 611-15) was "consistent with the other medical evidence of record," Dr. Peterson responded,

> Based on the record that I reviewed, as I've described it, hopefully, I've conveyed that there's moments in the record that suggest a functioning that is within functional limits; and . . . functioning that suggests that the claimant cannot manage funds on her own behalf; lacks consistency; and most importantly, we don't have objective medical evidence to suggest that the impairment is that severe.

(AR 101.)  At the close of the ALJ's questioning, Dr. Peterson

again noted that the record was ambiguous. (AR 103.)  The ALJ asked whether "the medical evidence does not show that she has a mental impairment that would . . . have more than a minimal [e]ffect on her basic functional abilities?" (<u>Id.</u>) Dr. Peterson responded, "That's what the mental status exam suggests," but "that does not agree with the reported symptoms . . . nor with some of the opinions extended by the treating source." (<u>Id.</u>)  He concluded by noting that "[w]e would need more information" to assess whether Plaintiff had "moderate impairment" in social functioning. (AR 104.)

When examined by Plaintiff's attorney, Dr. Peterson again provided equivocal testimony and noted that the record was ambiguous. He noted that he faced a "dilemma" in drawing "a general conclusion about [plaintiff's] mental health" because "there's objective medical evidence suggesting functioning that's not as indicated in the progress notes." (AR 107.)  After recounting some of the medical evidence in the record, he then responded to Plaintiff's attorney's questions as follows:

> Q. So, isn't it possible that on a given day, she might have been doing better; and then, other days, she might have been doing worse?
> A. Sure.
> Q. Okay. Does that negate, then, a finding that she's got a mental impairment?
> A. It reinforces my point, that **<u>we have equivocal data, and we need more objective medical evidence to establish a longstanding, enduring, marked level of impairment</u>**. That's what the record doesn't

|    |    |    |
|----|----|----|
| 1  |    | show. |
| 2  | Q. | Well, so, what . . . objective evidence can we get |
| 3  |    | that would substantiate her? |
| 4  | A. | The typical standard (INAUDIBLE) psychological |
| 5  |    | testing. |
| 6  | Q. | So, you believe that, absent psychological testing, |
| 7  |    | we don't have enough evidence to show that she's |
| 8  |    | got a severe mental impairment? |
| 9  | A. | No.  If this record had progress notes from a |
| 10 |    | psychiatrist indicating marked level of impairment, |
| 11 |    | mental status exams from a consultative exam |
| 12 |    | indicating marked level of impairment, an adult |
| 13 |    | initial assessment from the treating source |
| 14 |    | indicating marked level of impairment, then we |
| 15 |    | would have agreement, and there's not a problem. |
| 16 |    | We don't have that in this record. |

(AR 109-10 (emphasis added).)  When Plaintiff's attorney asked, "So . . . there's equivocal information, but you're saying it's likely she has a mental health impairment," Dr. Peterson responded, "No, I, I can't say that, because there isn't enough information."  (AR 113.)  He further testified:

|    |    |    |
|----|----|----|
| 22 | A. | I'm not going to be able to say there are mental |
| 23 |    | health issues when there's not sufficient |
| 24 |    | information.  There's equivocal information in the |
| 25 |    | record.  Is it likely that she has mental health |
| 26 |    | issues?  Yes.  But what I'm being asked to do is to |
| 27 |    | address the listings and the severity, and this |
| 28 |    | record doesn't allow me to do that reliably or |

1       consistently.
2   Q.  Okay.  And so, you believe that psychological
3       testing might clear the air?
4   A.  It may, or testing that's been done previously.
5  (AR 113-14.)
6       The ALJ then reexamined Dr. Peterson and attempted to nail
7  down his testimony by asking whether Dr. Goldfein's questionnaire
8  "is essentially at odds with the other medical evidence."  (AR
9  114.)  But Dr. Peterson was again noncommital, replying, "No,
10 your honor, it's consistent with some and at odds with others."
11 (Id.)  He concluded by stating that there was "insufficient
12 information" in the record regarding Plaintiff's mental
13 impairments, and "there are equivocal data," some of which
14 supported Plaintiff's contentions and some of which did not.  (AR
15 118.)  He reiterated that "because of that, we need more
16 information," and "that's the summary of my interpretation of the
17 file."  (Id.)  Plaintiff's attorney then requested further
18 psychological testing, but the ALJ denied the request, stating
19 that it "wouldn't necessarily be further relevant."  (AR 119.)
20      In his written opinion, the ALJ evaluated Dr. Peterson's
21 testimony as follows:
22      At the hearing on November 12, 2009, the medical
23      expert, David Peterson, Ph.D., a licensed psychologist[,]
24      testified that the medical evidence did not show that the
25      claimant had a severe mental impairment.  He said the
26      evidence was insufficient to show a definite mental
27      impairment.  She [sic] had rule [sic] out major
28      depressive disorder vs. dysthymia v. [sic] adjustment

>disorder with mixed anxiety and depressive features. He said that there had been episodes in the past where mental impairments were diagnosed, but the medical evidence showed that she was stable and did not have a medically determinable mental impairment. Dr. Peterson testified that although the medical record shows some instances of possible significant mental limitations, the overall medical record does not provide sufficient information to support the existence of a severe mental impairment. In supporting this conclusion, Dr. Peterson noted multiple instances in the record where the claimant denied experiencing any significant mental symptoms [(AR 530-73, 656-99)]. Dr. Peterson also pointed out that there is no testing in the record to support Dr. Goldfein's findings of marked limitations in concentration, persistence, or pace. Finally, Dr. Peterson noted that the most objective evidence of the claimant's mental limitations is the claimant's mental status examinations, which reveal few significant limitations.

(AR 34.)

The ALJ's characterization of Dr. Peterson's testimony was not correct. While the ALJ portrayed his testimony as stating unequivocally that the evidence did not show that Plaintiff had a severe impairment, Dr. Peterson actually, and repeatedly, testified that the evidence was "equivocal" and "insufficient" to evaluate Plaintiff's mental functioning and that further testing was likely needed. (See AR 96-119.) As in Tonapetyan, the ALJ

here "clearly relied heavily on" Dr. Peterson's testimony in concluding that Plaintiff's impairment was not severe, and "[g]iven this reliance, the ALJ was not free to ignore" Dr. Peterson's "equivocations and his concern over the lack of a complete record upon which to assess" Plaintiff's mental impairment. 242 F.3d at 1150-51. Instead, the ALJ had a duty to supplement the record to resolve the ambiguities identified by the doctor. See id. Because he did not, his decision must be reversed and the case remanded for further proceedings. See also Tate v. Astrue, No. CV 11-3213 CW, 2012 WL 1229886, at *6 (C.D. Cal. Apr. 12, 2012) (ALJ erred in not further developing record when "ME suggested that it was difficult for her to form an opinion with respect to Plaintiff's disability" and ultimate assessment of Plaintiff's RFC was "highly equivocal"); Rosol v. Astrue, No. EDCV 08-1692 AGR, 2009 WL 3122779, at *3 (C.D. Cal. Sept. 25, 2009) ("Having relied on the ME's opinion, the ALJ is not free to ignore the ME's equivocal testimony that there was insufficient evidence without treatment records to review.").

    B.   Other Issues

Plaintiff also alleges that the ALJ erred in (1) finding that Plaintiff's mental impairment was not severe; (2) evaluating and weighing the findings and opinions of Plaintiff's treating physicians; and (3) determining that Plaintiff's impairments did not meet or equal any impairments in the Listing. (J. Stip. at 3-22.) Because the Court finds that the ALJ's failure to further supplement the record in light of Dr. Peterson's equivocal and ambiguous testimony was in error, it is not necessary for it to address the remainder of Plaintiff's arguments. See Negrette v.

Astrue, No. EDCV 08-0737 RNB, 2009 WL 2208088, at *2 (C.D. Cal. July 21, 2009) (finding it unnecessary to address further disputed issues when court found that ALJ failed to properly consider treating doctor's opinion and lay-witness testimony). On remand, the ALJ will necessarily reevaluate the medical evidence regarding the severity of Plaintiff's mental impairments after ordering further testing or obtaining other additional evidence consistent with this opinion.

**VI. CONCLUSION**

When error exists in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16, 123 S. Ct. 353, 355, 154 L. Ed. 2d 272 (2002) (citations and quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004). Remand for further proceedings is appropriate "if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); see Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000) (explaining that "decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). Here, upon remand, the ALJ may order further psychological testing and examinations and hold supplemental administrative proceedings as necessary to resolve the ambiguities in the record identified by Dr. Peterson. See 20 C.F.R. §§ 404.1519(a), 416.919(a); Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001). Accordingly, remand, not an award of benefits, is the proper course in this case. See Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1136 (9th Cir. 2011) (remand for automatic payment

of benefits inappropriate unless evidence unequivocally establishes disability).

### ORDER

Accordingly, **IT IS HEREBY ORDERED** that (1) the decision of the Commissioner is REVERSED; (2) Plaintiff's request for remand is GRANTED; and (3) this action is REMANDED for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: November 13, 2012

JEAN ROSENBLUTH
U.S. Magistrate Judge